Kail Edward GIBSON, Appellant,

v.

The STATE of Texas, Appellee.

No. 09–06–307–CR.

Court of Appeals of Texas,
Beaumont.

Submitted Feb. 15, 2007.

Decided May 23, 2007.

Stephen Christopher Taylor, Humble, for appellant.

William Lee Hon, Criminal District Attorney, Livingston, for state.

Before McKEITHEN, C.J., GAULTNEY and HORTON, JJ.

## OPINION

HOLLIS HORTON, Justice.

A jury convicted Kail Edward Gibson of aggravated sexual assault of a child and sexual assault of a child. The jury assessed his punishment at fifty years' imprisonment for the aggravated sexual assault and ten years' imprisonment for the sexual assault. The trial court ordered the sentences to run concurrently. Gibson filed this appeal, in which he raises three issues. We affirm.

### The Evidence

The victim testified regarding her father's sexual abuse. When the victim was approximately twelve and one-half years old, she woke up and found Gibson "feeling" her female sexual organ. She described that this conduct progressed to Gibson's digital penetration of her female sexual organ and to sexual intercourse. The progression to sexual intercourse occurred by her thirteenth birthday. The victim testified that Gibson told her he would kill himself if she reported him. She also testified that when she requested that Gibson stop his advances toward her, he got angry and mistreated her mother and her two siblings.

The victim testified that Gibson began sleeping regularly in her bed with her. According to the victim, her mother began questioning Gibson regarding this behavior; he responded that it was none of the mother's business, and "that he would raise his daughter how he wanted to." Because Gibson had threatened to commit suicide, the victim told her mother that nothing inappropriate had occurred with her father.

After her parents divorced, the victim testified that she voluntarily chose to live with Gibson because she did not get along well with her mother, and "with [Gibson] I got to do what I wanted to because I had something over his head." Gibson's behavior toward the victim continued after they moved in with his mother. The victim testified that she and Gibson had intercourse approximately three or four times a week.

The evidence admitted at trial included letters and a poem from Gibson to the victim. The victim testified that a letter in which Gibson wrote, "[h]ope you got a good nites [sic] sleep last night!! That[']s what you ask[ed] for," referred to a night that she begged Gibson to let her sleep instead of "messing" with her as usual. The victim stated that Gibson continued to have sex with her until she told her mother about the abuse in January 2005.

The victim's mother testified that around the summer of 2001, she began finding Gibson in her daughter's bed. The mother repeatedly questioned her daughter and Gibson concerning whether anything inappropriate was happening between them. They denied any inappropriate behavior, but the mother testified that Gibson reacted defensively, and told her that "nobody was going to tell him how he could or could not love his kids." According to the mother, Gibson continued to

sleep with the victim despite the mother's objections to him doing so. The mother also testified that Gibson attempted to prevent her from knowing when he slept with the victim. The mother stated that this behavior occurred over an approximate three-year period and that she was aware that Gibson was sleeping in the victim's bed approximately four times a week before she and Gibson divorced.

Three of Gibson's co-workers testified regarding Gibson's relationship with the victim. All three of them recalled Gibson speaking of the victim more often than he spoke of his other children. One co-worker testified that he became concerned with a letter he found written by Gibson to the victim and reported his concern about the letter to another co-worker who also served as a deputy sheriff with the Polk County Sheriff's Department. The deputy sheriff testified that some of the letter's content was unusual, but he took no further action. Nonetheless, the deputy sheriff elaborated that Gibson commented on the victim wearing "G-string" underwear and that Gibson told him that he sometimes climbed in bed with the victim. Another of Gibson's co-workers testified that Gibson seemed infatuated with the victim and made inappropriate comments regarding her, including the development of the victim's breasts.

Several of Gibson's sisters also testified at trial. Each explained that after the victim told her mother about the alleged abuse, they assisted Gibson in obtaining psychiatric treatment because he seemed depressed.

Pradeep Kumar Roy, a licensed psychiatrist, treated Gibson. Dr. Roy testified that his medical records reflected that Gibson admitted sexually abusing the victim and that the victim had reported the abuse. Dr. Roy's records were not offered as exhibits at the trial.

Gibson testified in his defense. Although he admitted to sleeping in his teenage daughter's bed, he denied ever molesting his daughter. Gibson also attempted to explain that Dr. Roy's note was taken out of context and that he did not tell Dr. Roy that he had molested his daughter. Rather, Gibson testified that his daughter accused him of sexual molestation because she wanted to live with her mother, which he attributed to his "cracking down on her and finding out things that she was doing and the crowd that she was hanging around[.]"

### Legal Sufficiency Challenges

■ In issues one and two, Gibson asserts that the evidence is legally insufficient to support his convictions. When reviewing the legal sufficiency of the evidence, we view the evidence in the light most favorable to the verdict and determine whether any rational fact-finder could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Ross v. State*, 133 S.W.3d 618, 620 (Tex.Crim. App.2004).

■ In count one of the indictment, the State charged Gibson under section 22.021(a)(1)(B)(i), (2)(B) of the Penal Code. It provides: "A person commits an offense . . . if the person . . . intentionally or knowingly . . . causes the penetration of the anus or sexual organ of a child by any means; [and] . . . the victim is younger than 14 years of age[.]" Tex. Pen.Code. Ann. § 22.021(a)(1)(B)(i), (2)(B) (Vernon Supp.2006). In count two of the indictment, the State charged Gibson under section 22.011(a)(2)(A) of the Penal Code. It provides: "A person commits an offense if the person . . . intentionally or knowingly . . . causes the penetration of the anus or

sexual organ of a child by any means[.]" *Id.* § 22.011(a)(2)(A) (Vernon Supp.2006). "Child" is defined under section 22.011 as "a person younger than 17 years of age who is not the spouse of the actor." *Id.* § 22.011(c)(1) (Vernon Supp.2006). Both counts of the indictment further alleged that Gibson penetrated the victim's female sexual organ by digital penetration and through sexual intercourse.

We have previously described the testimony of the witnesses regarding Gibson's conduct toward the victim. There is sufficient evidence to show Gibson's penetration of the sexual organ of the victim prior to the victim's fourteenth birthday and after the victim's fourteenth birthday. Viewing the record in the light most favorable to the verdict, a rational jury could have concluded beyond a reasonable doubt that Gibson was guilty of aggravated sexual assault of a child and sexual assault of a child. *See* Tex. Pen.Code. Ann. §§ 22.021(a)(1)(B)(i), (2)(B); 22.011(a)(2)(A); *Jackson,* 443 U.S. at 318–19, 99 S.Ct. 2781; *Ross,* 133 S.W.3d at 620. We overrule issues one and two.

### Admission of Evidence Challenge

In his third issue, Gibson asserts the trial court erroneously admitted Dr. Roy's testimony that he admitted to sexually abusing the victim. Gibson argues that the State illegally obtained his medical records and concludes that the evidence obtained from those records is rendered inadmissible by article 38.23 of the Texas Code of Criminal Procedure. *See* Tex. Code Crim. Proc. Ann. art. 38.23 (Vernon 2005) (generally barring admission of evidence obtained in violation of law).

■ We review a trial court's ruling on the admission of evidence under an abuse of discretion standard. *See Weatherred v. State,* 15 S.W.3d 540, 542 (Tex. Crim.App.2000). We will not disturb the trial court's ruling on appeal unless it lies outside the zone of reasonable disagreement. *See id.*

■ Prior to the trial court's admission of this evidence, Gibson objected to the evidence and asserted that the State obtained his medical records in violation of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"). *See* Pub.L. No. 104–191, 110 Stat. 1936 (1996) (codified primarily in titles 18, 26, and 42 of the United States Code). Gibson argued that the State failed to comply with HIPAA's procedures in obtaining his records because the State did not notify him that it had requested them. *See* 45 C.F.R. § 164.512 (2006). The State maintained that it validly obtained the records through a grand jury subpoena pursuant to a HIPAA exception.

HIPAA specifically authorizes a covered entity to disclose protected health information for a law enforcement purpose without an individual's permission in response to a grand jury subpoena. 45 C.F.R. § 164.512(f)(1)(ii)(B); *see also In re Grand Jury Subpoena,* 197 F.Supp.2d 512, 515 (E.D.Va.2002). Gibson did not contend, at trial or on appeal, that his medical records were obtained by means other than a grand jury subpoena. Because the record does not show that Gibson's medical records were obtained in violation of any law, the trial court did not err in rejecting Gibson's claim that article 38.23 prohibited the admission of Dr. Roy's testimony. *See* Tex.Code Crim. Proc. Ann. art. 38.23.

Gibson also asserts a Fifth Amendment claim and argues that no one warned him that his statements during his diagnostic interview could be used against him at trial. However, Gibson was *not* in custody during his hospital admission; and Dr. Roy was not an agent of the State. *See Miranda v. Arizona,* 384 U.S. 436, 444, 86

S.Ct. 1602, 16 L.Ed.2d 694 (1966); *see also Rhode Island v. Innis,* 446 U.S. 291, 301, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980); *Paez v. State,* 681 S.W.2d 34, 37 (Tex.Crim. App.1984). Because Gibson's statements were not products of a custodial interrogation, Gibson's Fifth Amendment argument fails.

We hold that the trial court did not abuse its discretion in admitting Dr. Roy's testimony. Accordingly, we overrule Gibson's third issue and affirm the trial court's judgment.

AFFIRMED.